UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN FRANCIS DEVILLE, JR.,

    *Plaintiff*,

v.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY,

    *Defendant*.

Civil Action No. 23 - 2126 (LLA)

**MEMORANDUM OPINION**

Plaintiff John Francis Deville, Jr., brings this employment discrimination action against the Washington Metropolitan Area Transit Authority ("WMATA"). The matter is before the court on WMATA's Motion for Summary Judgment, ECF No. 11, which has been fully briefed, ECF Nos. 13-15.[1] For the reasons discussed below, the court will grant WMATA's motion.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On August 30, 2022, WMATA extended Mr. Deville a conditional offer for employment as a Student Metrobus Operator in the Metrobus Operator Training Program. ECF No. 11, at 3; ECF No. 11-1 ("Def.'s SMF") ¶ 1; ECF No. 11-9 ("Scott Decl."); ECF No. 13, at 1-3 ("Pl.'s SMF") ¶ 1.[2] The offer was "contingent on [Mr. Deville's] satisfactory completion of both a background check and medical screening" and his ultimately obtaining a commercial driver's

---

[1] On September 17, 2024, the court permitted Mr. Deville to file a surreply. ECF No. 15.

[2] Page numbers cited in this memorandum opinion are those generated by CM/ECF.

license ("CDL"). Def.'s SMF ¶ 1; *see* Pl.'s SMF ¶ 1; ECF No. 11-2, at 1. Specifically, WMATA's offer letter stated:

> Your placement into this role is now contingent upon: (1) successful completion of a medical screening, which may include a drug and alcohol test and physical exam; and (2) your obtaining and providing proof of a valid commercial driver's license . . . . In order to receive a commercial driver's license . . . , you must meet the U.S. Department of Transportation (DOT) physical requirements.

ECF No. 11-2, at 1. Mr. Deville intended to obtain his CDL through WMATA's training program. ECF No. 11-4 ("Pl.'s Dep. Tr.") at 17:4-11.

In order to obtain a CDL, the applicant must have a medical certificate that is colloquially known as a "DOT Medical Card." Def.'s SMF ¶ 3; Pl.'s SMF ¶ 3. WMATA requires that its Student Metrobus Operators obtain their DOT Medical Cards from its third-party medical screening provider, Concentra. Def.'s SMF ¶ 5; Pl.'s SMF ¶ 5. WMATA "does not accept DOT Medical Cards issued outside its own process," such as cards obtained before employment with WMATA. Def.'s SMF ¶ 4; Pl.'s SMF ¶ 4; Scott Decl. ¶ 6. Accordingly, it did not accept a DOT Medical Card that Mr. Deville had previously obtained under a different employer. Pl.'s Dep. Tr. at 21:10-22:18, 23:16-24:3; Pl.'s SMF ¶¶ 4-5.

Mr. Deville reported to Concentra for a physical exam on September 13, 2022. *See* Def.'s SMF ¶ 6; Pl.'s SMF ¶ 6. The examiner noted that his body mass index ("BMI") and neck circumference suggested "[p]ossible sleep apnea or sleep disorder." ECF No. 11-5, at 2. Because federal regulations prevent those with sleep apnea from operating commercial motor vehicles, *id.* (quoting 49 C.F.R. § 391.41(b)(5)), the examiner told Mr. Deville that he could either undergo a sleep study or lose weight, Pl.'s Dep. at 25:14-20; *see* ECF No. 11-5, at 1.

Mr. Deville elected to lose weight, and he returned to Concentra on October 21, 2022 for a second examination. Pl.'s Dep. Tr. at 28:8-11; *see* ECF No. 13, at 10. He was examined by

Dr. Carole Levy, who determined that his BMI was below the threshold for possible sleep apnea and approved him for a DOT Medical Card.  Def.'s SMF ¶ 7; Pl.'s SMF ¶ 7; ECF No. 11-6; *see* Pl.'s Dep. Tr. at 32:3-5.  Dr. Levy then consulted with WMATA staff about whether to issue Mr. Deville a DOT Medical Card for a duration of one year or two years, which resulted in Mr. Deville's waiting in the examination room while Dr. Levy spoke with WMATA.  Pl.'s Dep. Tr. at 29:20-34:20.  Mr. Deville grew "irritated" by what he perceived to be an "undue delay" during Dr. Levy's consultation with WMATA.  *Id*. at 35:9-10, 55:21-22.  Mr. Deville admits that he expressed his dissatisfaction to Dr. Levy and to Concentra's corporate office, *see id*. at 36:7-37:12, 55:11-13, but he denies that his "conversation with Dr. Levy and other members of the staff was . . . confrontational," *id*. at 55:11-13; *see* Pl.'s SMF ¶ 8; ECF No. 13-2 ("Pl.'s Decl.") ¶ 16; *see* ECF No. 15, at 3.  Dr. Levy ultimately approved Mr. Deville for a two-year DOT Medical Card on October 21, 2022.  Pl.'s Dep. Tr. at 35:4-56; Def.'s SMF ¶ 7; Pl.'s SMF ¶ 7.

Three days later, Dr. Levy sent an email to Nina Webb, a Human Resources recruiter at WMATA.  The email is as follows:

> I wanted to share with you an experience we had today at Steeplechase with a man who I believe is a WMATA applicant.  He had been seen in September by Alphonse, who appropriately referred him for a sleep study due to BMI > 40.  He instead lost some weight . . .  His BMI today was 39.6, so I was able to issue him a card.  Despite addressing this issue promptly, he was extremely unhappy, as he felt his weight had not been documented appropriately.  He filed a complaint with Concentra and was on the phone with "corporate" when he returned a second time to continue to register his complaint.  We explained repeatedly to him and showed him that his documentation was updated with today's weight, but he was extremely unpleasant and rude to the point where I requested security.  If he is someone being considered for employment with WMATA in a public facing role, they may want to be aware of this.  His name is John F. Deville, JR.

ECF No. 11-7 (ellipsis in original).

3

After WMATA received Dr. Levy's email, it rescinded Mr. Deville's contingent employment offer. Def.'s SMF ¶ 9; *see* ECF No. 11-8 at 1; Pl.'s SMF ¶ 9; Pl.'s Dep. Tr. at 38:10-39:4, 44:19-45:3; ECF No. 13, at 10. WMATA informed Mr. Deville of the recission through an email on October 25, 2022, which contained as an attachment a letter, dated September 27, 2022, stating in relevant part:

> An offer of employment was extended to you on August 26, 2022, for the position of Student Metrobus Operator in Bus Transportation. This letter confirms we are rescinding the offer. We appreciate your interest in working at Metro.

ECF No. 11-8, at 2. WMATA did not provide Mr. Deville with the reason his offer was rescinded. *See* Pl.'s Dep. Tr. at 56:5-7.

The parties dispute both the timing of and the reason for WMATA's decision to rescind Mr. Deville's offer. WMATA represents that it made the decision to rescind the offer after it received Dr. Levy's email on October 24, 2022, and it maintains that the letter was simply misdated "September 27, 2022." ECF No. 14, at 2-3; *see* Def.'s SMF ¶ 10; Scott Decl. ¶ 9, ECF No. 11-10. Pointing to the September 27, 2022 date on the recission letter, Mr. Deville surmises that WMATA made "the actual decision to rescind the offer in September 2022 shortly after the [first medical] examination," and that it did so by impermissibly regarding him as having sleep apnea. Pl.'s SMF ¶ 10.

In July 2023, Mr. Deville brought this action alleging that WMATA had failed to hire him and had subjected him to additional requirements because it regarded or perceived him as having a disability—sleep apnea—in violation of the Rehabilitation Act, 29 U.S.C. § 794, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* ECF No. 1 ¶¶ 3, 39-73. He seeks $1.5 million in compensatory damages, back pay, front pay, appointment to a position at WMATA, and any hiring incentives to which he would have been entitled. *Id.* at 9.

4

## II.     LEGAL STANDARDS

### A.     Rule 56

Under Federal Rule of Civil Procedure 56, "[a] party is entitled to summary judgment only if there is no genuine issue of material fact and judgment in the movant's favor is proper as a matter of law." *Soundboard Ass'n v. Fed. Trade Comm'n*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (quoting *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 805 (D.C. Cir. 2006)); *see* Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact" in dispute.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party must present specific facts supported by materials in the record that would be admissible at trial and that could enable a reasonable jury to find in its favor.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Allen v. Johnson*, 795 F.3d 34, 38 (D.C. Cir. 2015) (noting that, on summary judgment, the appropriate inquiry is "whether, on the evidence so viewed, 'a reasonable jury could return a verdict for the nonmoving party'" (quoting *Liberty Lobby*, 477 U.S. at 248)).

"[C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary judgment," *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam), and "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor," *id.* at 651 (quoting *Liberty Lobby*, 477 U.S. at 255 (alteration in original)).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Liberty Lobby*, 477 U.S. at 255); *see Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 295-96 (D.C. Cir. 2015).

For a factual dispute to be "genuine," the nonmoving party must establish more than "[t]he mere existence of a scintilla of evidence in support of [his] position," *Liberty Lobby*, 477 U.S.

5

at 252, and he cannot rely on "mere allegations" or conclusory statements, *see Equal Rts. Ctr. v. Post Props., Inc.*, 633 F.3d 1136, 1141 n.3 (D.C. Cir. 2011). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted).

### B.     Burden-Shifting Analysis Under *McDonnell-Douglas*

If a discrimination claim is "based upon circumstantial evidence, [the court] analyze[s] the claim under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*." *Kersey v. Wash. Metro. Area Transit Auth.*, 586 F.3d 13, 16-17 (D.C. Cir. 2009) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-05 (1973)). First, the plaintiff "must establish a prima facie case of discrimination." *Reeves*, 530 U.S. at 142. Under the Rehabilitation Act and the ADA, a plaintiff makes out a prima facie case by "demonstrat[ing] that he had or was perceived to have a disability, he applied for an available position, he was otherwise qualified, and his non-selection gives rise to an inference of discrimination." *Hatter v. Wash. Metro. Area Transit Auth.*, 244 F. Supp. 3d 132, 135 (D.D.C. 2017) (internal quotation marks omitted). If he does so, "the burden shifts to the defendant to produce evidence of 'a legitimate, nondiscriminatory reason' for its actions." *Kersey*, 586 F.3d at 17 (quoting *Reeves*, 530 U.S. at 142); *see Butler v. Wash. Metro. Area Transit Auth.*, 275 F. Supp. 3d 70, 81 (D.D.C. 2017).

Once the employer proffers "'a legitimate, nondiscriminatory . . . reason' for its actions . . . , 'the *McDonnell Douglas* framework . . . disappear[s], and the sole remaining issue [is] discrimination . . . *vel non*.'" *Kersey*, 586 F.3d at 17 (third and fourth alterations in original) (quoting *Reeves*, 530 U.S. at 142-43). At this juncture, "the court must decide one ultimate question: 'Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer

6

intentionally discriminated against the employee . . . ?'" *DeJesus v. WP Co. LLC*, 841 F.3d 527, 532-33 (D.C. Cir. 2016) (alteration in original) (quoting *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008)).

### III.   DISCUSSION

In relevant part, the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of . . . his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Mr. Deville alleges that WMATA violated the Rehabilitation Act and the ADA when it failed to hire him and subjected him to additional requirements because it perceived or regarded him as having sleep apnea. ECF No. 1 ¶¶ 39-73.

As a threshold matter, WMATA is immune from suits for money damages under the ADA, *Reddish v. Wash. Metro. Area Transit Auth.*, No. 22-CV-2658, 2023 WL 5289290, at *3 (D.D.C. Aug. 17, 2023), so the court will consider the ADA only as it applies to Mr. Deville's claims for equitable relief.[3] And because the Rehabilitation Act and the ADA share the same

---

[3] While WMATA did not raise sovereign immunity as a defense, the court considers it *sua sponte* because it goes to the court's subject-matter jurisdiction. *See NetworkIP, LLC v. Fed. Commc'ns Comm'n*, 548 F.3d 116, 120 (D.C. Cir. 2008) ("[S]ubject matter jurisdiction may not be waived, and . . . courts may raise the issue *sua sponte*." (quoting *Athens Cmty. Hosp., Inc. v. Schweiker*, 686 F.2d 989, 992 (D.C. Cir. 1982))).

standards, the court will consider both statutes together. *See Austin v. Wash. Metro. Area Transit Auth.*, No. 19-CV-2718, 2020 WL 2962609, at *7 (D.D.C. May 28, 2020).

### A. Mr. Deville's "Failure to Hire" Claims

In Counts I and III, Mr. Deville alleges that WMATA failed to hire him because it "regard[ed]" or "perceive[ed]" him as having sleep apnea. *See* ECF No. 1 ¶¶ 39-42, 49-50, 67-68. Both the Rehabilitation Act and the ADA prohibit discrimination based on "being regarded as having" or being "perceived" as having a disability. 42 U.S.C. §§ 12102(1)(C), 12102(3), 12112. WMATA questions whether Mr. Deville has established a prima facie case, ECF No. 11, at 6, but contends that, even if he had, it proffered a legitimate, nondiscriminatory reason for rescinding his offer of employment—"Dr. Levy's representations that [Mr. Deville] was rude and unpleasant to Concentra staff and would not make a good employee." Def.'s SMF ¶ 10; ECF No. 11, at 6; *see* Scott Decl. ¶ 9. The relevant question for the court is thus whether Mr. Deville has produced sufficient evidence from which a reasonable jury could conclude that WMATA's proffered nondiscriminatory reason for rescinding his offer was not the actual reason and that, instead, WMATA was intentionally discriminating against him.

Mr. Deville has not carried his burden because the evidence he relies on would not permit a reasonable jury to conclude that WMATA's decision was pretextual. First, Mr. Deville points to his statements denying that he was rude to Concentra staff, Pl.'s SMF ¶ 8; ECF No. 13-1 ¶ 16; ECF No. 15 at 3, presumably to show that Dr. Levy's email "does not establish the absence . . . of a genuine dispute," Fed. R. Civ. P. 56(c)(1)(B), regarding his conduct at Concentra on October 21, 2022. But whether Mr. Deville was actually rude to Concentra staff is not a dispute of material fact, because nothing about that dispute calls into question WMATA's proffer that it relied on Dr. Levy's statements, whether true or not, in deciding to rescind his employment offer.

8

Mr. Deville relatedly argues that WMATA failed to substantiate Dr. Levy's email with "a declaration, affidavit or other sworn testimony from [the] person who alleged that Plaintiff was rude," Pl.'s SMF ¶ 8; *see* ECF No. 15, at 3, but again, that does not undermine WMATA's assertion that it relied on Dr. Levy's email in deciding to rescind his offer.

Next, Mr. Deville attacks the declaration from WMATA's Human Resources representative, Tracy Scott, ECF No. 11-9, as a "summary of general employment practices, rather than a direct account of the discriminatory actions at the heart of this case," and he argues that the declaration fails to present "any evidence that could effectively counter [his] testimony or substantiate [WMATA's] claims." ECF No. 15, at 3. Not so. Ms. Scott's declaration directly supports WMATA's position that the "decision to rescind [Mr. Deville's] [offer of] employment was based solely on Dr. Levy's representations that [Mr. Deville] was rude and unpleasant to Concentra staff and would not make a good 'front facing' employee." Scott Decl. ¶ 9. Mr. Deville presents no legitimate argument to undermine the statements in the declaration.

Finally, Mr. Deville attaches great significance to the September 27, 2022 date on the rescission letter. ECF No. 15, at 5-6; ECF No. 13, at 10. He claims that WMATA actually made its decision to rescind his offer during the period between his first visit to Concentra on September 13, 2022, when he was perceived to have sleep apnea, and his second visit on October 21, 2022, when he was cleared to receive his DOT Medical Card. ECF No. 15, at 5-6; ECF No. 13, at 10; Pl.'s SMF ¶¶ 5, 13. Based on this timeline, he argues that WMATA could not have relied on Dr. Levy's email, which was sent on October 24, 2022, because her email was sent nearly four weeks after the date on the rescission letter. ECF No. 13, at 10; ECF No. 11-7. The problem here is Mr. Deville's failure to point to material in the record to support his position, notwithstanding the opportunity for both parties to conduct discovery. *See generally* ECF Nos. 13,

9

15.  WMATA explains that the date on the rescission letter was a mistake, which it substantiates by pointing to (1) the October 24, 2022 email chain in which the decision to rescind Mr. Deville's offer was made and (2) Mr. Deville's own testimony that he received the letter after he had been approved for his DOT Medical Card during his second visit to Concentra in October.  ECF No. 14, at 203 (citing ECF No. 11-10; Pl.'s Dep. Tr. 38:22-39:1-4, 44:19-22, 45:1-7).  Mr. Deville could have taken discovery to confirm the date on which the letter was generated, but he did not.

In his surreply, Mr. Deville references, and includes an excerpt of, emails between WMATA staff on September 14, 2022, one day after the first medical examination.  ECF No. 15, at 3-4; ECF No. 15-1, at 1.  He argues that these emails show that WMATA was in discussions to prevent his employment in September 2022, and that the subsequent record materials are "a belated attempt to cover up [WMATA's] discriminatory conduct."  ECF No. 15, at 3.  It is difficult to understand from the portions excerpted what these emails are about, but they appear to relate to Mr. Deville's concern that his height had been listed incorrectly on his Concentra medical form.  ECF No. 15-1, at 1.  Even drawing all inferences in Mr. Deville's favor, these emails are not enough to create a genuine dispute of material fact on whether WMATA's proffered reason for rescinding his offer was pretextual.  That is especially so when, as the emails reflect, Mr. Deville was cleared to receive his DOT Medical Card—which he legally could not have received if he was perceived to have sleep apnea, 49 C.F.R. § 391.41(b)(5)—before WMATA sent the email containing his recission letter, see Def.'s SMF ¶¶ 7-10.[4]

---

[4] Mr. Deville also claims that a Concentra employee told him during his September 13, 2022 visit that he was "qualified for a DOT . . . certificate" but that WMATA had instructed Concentra "not to pass any applicants who[m] Defendant deems to be 'risky.'"  ECF No. 13, at 6.  The court cannot consider Mr. Deville's allegation, which is not supported by any record evidence, because it is hearsay.  *Greer v. Paulson*, 505 F.3d 1306, (D.C. Cir. 2007) (explaining that "'sheer hearsay. . . counts for nothing' on summary judgment" (quoting *Gleklen v. Democratic Campaign Comm.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000))).

Accordingly, because Mr. Deville has not produced sufficient evidence for a reasonable jury to find that WMATA's asserted non-discriminatory reason was a pretext for discrimination, the court will grant summary judgment to WMATA on Counts I and III.

### B.    Mr. Deville's "Additional Requirements" Claim

In Count II, Mr. Deville alleges that WMATA, on the basis of his perceived disability, imposed on him an additional requirement to which other applicants were not subjected. *See* ECF No. 1 ¶¶ 56-59.  Specifically, he claims that, due to his weight and neck circumference, *see id*. ¶¶ 57-63, WMATA required that he "lose weight within a 45-day timeframe or undergo a sleep study test," *id.* ¶ 59.  WMATA does not dispute that this requirement was imposed on Mr. Deville but argues that it was "medically necessary and job related," ECF No. 11, at 7, and thus does not run afoul of the Rehabilitation Act or the ADA.  As support, WMATA points to 42 U.S.C. § 12113(a), which provides:

> It may be a defense to a charge of discrimination under this chapter that an alleged application of qualification standards, tests, or selection criteria that screen out or tend to screen out or otherwise deny a job or benefit to an individual with a disability has been shown to be *job-related and consistent with business necessity*, and such performance cannot be accomplished by reasonable accommodation, as required under this subchapter.

ECF No. 11, at 7 (emphasis added).

WMATA represents that its bus operators are subject to DOT regulations, including a requirement that the operator have "no established medical history or clinical diagnosis of a respiratory dysfunction likely to interfere with his/her ability to control and drive a commercial motor vehicle safely," *id.* (quoting 49 C.F.R. § 391.41(b)(5)), which includes sleep apnea, *see* 49 C.F.R. § 391 App. D.1; *see also* ECF No. 11, at 6-8, ECF No. 14, at 1-2.  WMATA further maintains that it put Mr. Deville on notice that his offer was contingent on "successful completion

of a medical screening" and being eligible to receive a CDL, which required "meet[ing] the U.S. Department of Transportation (DOT) physical requirements." ECF No. 11-2, at 1, *see* ECF No. 11, at 6-8, ECF No. 14, at 1-2.

Aside from acknowledging WMATA's "argument . . . that federal regulations required an additional sleep apnea test," ECF No. 13, at 10, Mr. Deville offers no substantive response. Because "it is a defense to a claim of discrimination that the employer's action was 'required or necessitated by another Federal law or regulation,'" *Butler*, 275 F. Supp. 3d at 82 (quoting 29 C.F.R. § 1630.15(e)), WMATA is entitled to summary judgment on Count II.

## IV.   CONCLUSION

For the foregoing reasons, the court will grant WMATA's Motion for Summary Judgment, ECF No. 11. A contemporaneous order will issue.

_____
LOREN L. ALIKHAN
United States District Judge

Date:   March 7, 2025